UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAVID DALE WATSON, | |
| Plaintiff, | Case No.  1:14-CV-3179-MKD |
| vs. | |
| CAROLYN W. COLVIN, Commissioner, Social Security Administration, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment.  ECF Nos.  14, 15.  The parties consented to proceed before a magistrate judge.  ECF No. 6.  The Court has reviewed the administrative record and the parties' briefing.  For the reasons discussed below, the Court grants Defendant's motion (ECF No. 15) and denies Plaintiff's motion (ECF No. 14).

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

ORDER – 1

limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

ORDER – 2

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the

ORDER – 3

claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id*.

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe, or more severe, than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

ORDER – 4

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id*. If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id*.

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin*., 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

ORDER – 5

work "exists in significant numbers in the national economy."    20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act on March 29, 2012, Tr. 145, alleging onset (as amended) beginning October 27, 2012.  Tr. 29-30, 145.  The application was denied initially and on reconsideration.  Tr. 13.  Plaintiff's requested hearing was held before an Administrative Law ("the ALJ") on July 18, 2013.  Tr. 26-55.  On August 14, 3013, the ALJ issued a written decision in which the ALJ concluded that Plaintiff was not disabled pursuant to the Social Security Act.  Tr. 13-21.  After the Appeals Council declined review, he filed a complaint in this Court.  Tr. 1-6; ECF Nos. 1, 4.

At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 27, 2012, the amended alleged onset date. Tr. 15. At step two, the ALJ determined Plaintiff has the following six severe physical impairments: lumbar spine degenerative disc disease; T12 compression fracture; bilateral shoulder osteoarthritis; hypertension; diabetes mellitus; and obesity.  Tr. 15.  Plaintiff's congestive heart failure and sleep apnea, as well as mental impairments of mood disorder, anxiety disorder and pain disorder, were deemed to be "non-severe" under the Commissioner's regulations.

ORDER – 6

Tr. 15-16.  At step three, the ALJ concluded Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  Tr. 17.  The ALJ found that Plaintiff had the RFC to perform "light work" except that:

> with the opportunity to sit or stand as needed to alleviate discomfort, the claimant can stand and walk for about 6 hours on a flat surface and sit for about 6 hours in an 8-hour work day, and can lift, carry, push and pull within light exertional limits.  The claimant can frequently climb ramps and stairs, stoop, kneel, crouch, and crawl, and occasionally climb ladders, ropes, and scaffolds.  The claimant can frequently reach.  The claimant can perform work in which concentrated exposure to extreme cold, heat, wetness, humidity, and vibration is not present.

Tr. 17.  At step four, the ALJ determined Plaintiff could not perform his past relevant work.  Tr. 20.  Lastly, at step five, the ALJ considered Plaintiff's age, education, work experience, and residual functional capacity, and determined based upon the Medical Vocational Guidelines and testimony of a vocational expert, that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  Tr. 20.  These occupations included production assembler (DOT code 706.687-0101); hand packager (DOT code 559.687-074); agricultural produce sorter (DOT code 529.687-186), and certain cashier II positions (DOT code 211.462-010). Tr. 21.  Accordingly, the ALJ found Plaintiff was not disabled.  Tr. 21.

## ISSUES

Plaintiff raises the following issues:

ORDER – 7

1. Whether the ALJ erred in evaluating Plaintiff's mental impairments at step two?

2. Whether the ALJ erred in evaluating the medical evidence?

3. Whether the ALJ erred in finding that Plaintiff could perform other work existing in significant numbers in the national economy?

## DISCUSSION

### A. Mental Impairments in Step Two

Plaintiff contends the ALJ erred at step two in "rejecting" his mental impairments. ECF No. 14 at 10.

The impairments identified at step two are not intended to be a comprehensive survey. Step two is simply "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Accordingly, a claimant can only be prejudiced at step two by a finding that he has no severe impairments at all; otherwise, he advances to the next steps. The omission of an impairment at step two can only be harmful if it prejudices Plaintiff in steps three through five. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

The Social Security regulations set forth specific procedures for evaluating the severity of mental impairments. The regulations identify four broad functional areas in which to rate the degree of a claimant's functional limitation: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes

ORDER – 8

of decompensation."  20 C.F.R. § 1520a(c)(3).  When a claimant has no limitations or mild limitations in the first three functional areas and no episodes of decompensation, the mental impairment is generally considered non-severe.  20 C.F.R. § 1520a(d)(1).

As the ALJ found Plaintiff suffered from six other severe impairments, any step two error was harmless in and of itself.  *See Burch,* 400 F.3d at 682. However, the Court finds no error at step two.  Plaintiff inaccurately contends the ALJ "rejected all of [Plaintiff's] mental impairments as groundless complaints." ECF No. 14 at 10.  The ALJ clearly made a finding that his mood disorder, anxiety disorder and pain disorder were existing medically determinable mental impairments, but that they were non-severe.  Tr. 16-17.  In reviewing Plaintiff's mental impairments, the ALJ applied the framework prescribed by the regulations and concluded, based on the evidence in the record as a whole, that Plaintiff had "no more than mild functional mental limitations" and no extended episodes of decompensation.  Tr. 16-17.

The ALJ's decision is supported by substantial evidence and shows she carefully considered the one-time examining psychologist reports from Dr. Jan Kouzes and Dr. Aaron Burdge performed on behalf of the state Department of Social and Health Services (DSHS). In addition to numerous mild restrictions, these evaluations assessed "moderate" to "severe" degrees (as defined by DSHS)

ORDER – 9

of restriction in certain basic work activities.[1]  Tr. 467, 472-73.  However, the ALJ permissibly gave these greater severity ratings no weight because of inconsistencies with the physicians' own contemporaneous exams, with other evidence in the record, and with the Plaintiff's reported daily activities.

During Plaintiff's visit with Dr. Kouzes, he tested within normal limits for thought process and content, orientation, perception, memory, fund of knowledge, concentration, and abstract thought.  Tr. 469.  As to the mental status exam, he presented normal in appearance, speech, attitude and behavior, but showed a depressed mood.  Tr. 468.  The ALJ also mentioned that Dr. Kouzes linked her severity assessment with the severity of Plaintiff's *physical* symptoms.  Dr. Kouzes' opinion of limitations was inconsistent with the Dr. Kouzes' contemporaneous exam and objective findings in the report.

Similarly, Dr. Burdge's mental status exam of Plaintiff was unremarkable, with Plaintiff testing within normal limits in thought process and content, orientation, perception, concentration, abstract thinking, and insight and judgment,

---

[1] The activities were: understand, remember, and persist in tasks by following detailed instructions; perform activities within a scheduled, maintain regular attendance, and be punctual within customary tolerances without special supervision; adapt to changes in a routine work setting; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; and set realistic goals and plan independently.

ORDER – 10

all categories except as to fund of knowledge (not knowing how many weeks are in a year and leaving out two of the 12 months) and memory (after five minute delay, remembering only two of three items).  Tr. 474-475.  Furthermore, the ALJ did not err by noting the concern of Dr. Burdge based upon Plaintiff's performance on the Personality Assessment Inventory (PAI) that "certain indicators fall outside of the normal range, suggesting that [Plaintiff] may not have answered in a completely forthright manner; the nature of his responses might lead the evaluator to form a somewhat inaccurate impression of him based upon his style of responding."  Tr. 16, 471.  The ALJ's finding is consistent with Plaintiff's subjective assessment of his functioning in his Disability Report.   Plaintiff has attributed his alleged inability to work to his physical limitations, not a mental impairment.  *See, e.g*., Tr. 172, 181-187 (does not need reminders for personal care or taking medication; able to handle finances/bills, does not need to be reminded to go places or need anyone to accompany him); 186 (responded "N/A" to questions: "How long can you pay attention?"; "How well do you follow written instructions?"; "How well do you follow spoken instructions?"); 187 (when asked how Plaintiff handles stress, he responded "good,"; when asked how he handle changes in routine, he responded "good.").

Given this record, the ALJ did not err in rejecting Dr. Kouzes' and Dr. Burdge's medical opinions and the ALJ's step two analysis was supported by substantial

ORDER – 11

evidence.  Moreover, any step two error was harmless. The ALJ concluded that the Plaintiff's mental impairments caused "no more than mild limitation." Tr. 17.  The only mild limitations noted in the ALJ's step two analysis were in daily living and concentration, persistence and pace.  Tr. 16-17.  The ALJ's RFC limiting Plaintiff to light, unskilled work sufficiently accounted for these "no more than mild" functional limitations.  *Id.*; *see Stubbs—Danielson v. Astrue*, 539 F.3d 1169, 1173–76 (9th Cir. 2008) (when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence and pace, limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations).

## B. Evaluation of Medical Opinions

Plaintiff challenges the ALJ's determination of the residual functional capacity ("RFC") by alleging the ALJ improperly weighed the medical evidence of Paul Emmans, D.O., Caryn Jackson, M.D., and treating nurse practitioner Lisa Rutherford, ARNP.  ECF No. 14 at 11-16.  Plaintiff's challenges to the ALJ's (partial) rejection of Dr. Kouzes' and Burdge's opinions are discussed in the preceding section.

In determining RFC, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and non-exertional, severe and non-severe.  42 U.S.C. §§ 423(d) (2)(B), (5)(B).  In weighing medical

ORDER – 12

source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A nonexamining medical expert's opinion may constitute substantial evidence when it is consistent with other independent evidence. *Morgan v. Apfel*, 169 F.3d 595, 599–600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.").

**1.  Lisa Rutherford, ARNP**

ORDER – 13

Plaintiff argues the ALJ erroneously omitted discussion of Ms. Rutherford's assessments performed on March 8, 2012 (Tr. 272) and March 22, 2012 (Tr. 258). The Court does not find these assessments probative of Plaintiff's condition during the adjudicative period.  First, the assessments were performed in association with Plaintiff's Labor and Industries claim just two months following Plaintiff's acute injury and describe limitations expected to last several weeks.   Second, the assessments predate the alleged date of onset by seven months.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance."). Third, Plaintiff was eventually released to return to work without restrictions, which release suggests Ms. Rutherford's more restrictive assessments had expired. *See, e.g., Stepp v. Colvin*, 795 F.3d 711, 719 (7th Cir. 2015) (finding assessment that occurred prior to adjudicative period, which indicated short term inability to work was not "particularly probative" of claimant's condition during adjudicative period).  The ALJ did not err in declining to specifically discuss these assessments in her decision.  *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (the ALJ need only discuss evidence that is significant and probative).

**2.  Caryn Jackson, M.D.**

Plaintiff was initially seen by Dr. Caryn Jackson in October 2012 for back

pain and again in November 2012 for a diabetes follow up.  Tr. 380-89, 490.  On June 7, 2013, Dr. Jackson completed a questionnaire which was prepared and furnished by Plaintiff's counsel.  Tr. 488-490.  She marked a box labeled "agree" to the prepared statement that Plaintiff's "stated need for recumbency/need to lay down for an approximate average total time of 1 to 1 ½ hours during any eight or nine consecutive hours" was reasonable.  Tr. 489.  In addition, she checked the box for "Sedentary work," describing Plaintiff's physical capacity for maintaining full-time employment.  *Id*.  The ALJ accorded little weight to the opinion first, because she relied "heavily, if not entirely" on the Plaintiff's own "stated need" to lay down, as the doctor had not seen the Plaintiff for over six months; and secondly, because Dr. Jackson had written on the questionnaire that she had not seen him recently and was "unclear really what all is going on new other than ongoing pain."  Tr. 19, 490.  Opinions on a check-box form or report which does not contain significant explanation of the basis for the conclusions may be accorded little or no weight.  *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).  Moreover, an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings.  *Batson v. Comm'r, Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004).  Finally, "[a]n ALJ may reject a [] physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."

ORDER – 15

*Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Here, as noted by Defendant, the Plaintiff fails to assign error to the ALJ's adverse credibility finding.  Given the lack of supporting objective examination findings in the record by Dr. Jackson, these are sufficiently clear and convincing reasons, supported by substantial evidence, for rejecting Dr. Jackson's opinion as set forth on the June 7, 2013 questionnaire.

### 3. Paul Emmans, D.O.

Dr. Paul Emmans, D.O. treated Plaintiff at Central Washington Family Medicine in June and August 2012.  In August, he completed a physical functional evaluation form which according to the contemporaneous treatment note was "based on today['] s examination as well as a large file that [Mr. Watson] brings in with his neurosurgical and L&I records."  Tr. 348.  The form listed Plaintiff's chief complaints as right hand numbness when laying down, slight chest pain when laying down, and back pain in lower back that radiates to left hip.  Tr. 462.  He rated Plaintiff capable of sedentary work with the ability to change positions frequently. Tr. 462-464. He recommended physical therapy for treatment.  The ALJ's RFC accounted for Dr. Emmans' statement as to frequent position changes, but rejected the sedentary rating.  Despite his role as a treating physician, the ALJ found the opinion unpersuasive because there "is little substantiating clinical

ORDER – 16

evidence" and his treatment notes accounted for self-reported symptoms which the ALJ found were "in[] question."  Tr. 18.

Although it is improper to reject a treating physician's opinion based entirely on his reliance on self-reported symptoms, "[a]n ALJ may reject the treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible."  *Tommasetti*, 533 F.3d at 1041; *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (affirming rejection of treating psychiatrist's opinion that was based heavily on claimant's subjective complaints only after such complaints were "properly discounted").  The ALJ found Plaintiff's alleged degree of severity not credible due to the lack of "significant recurring clinical signs," and evidence of lack of candor.  Tr. 18.  The importance of the credibility of subjective complaint is underscored here, where, Plaintiff has not challenged this finding and the underlying condition is one that produces chronic pain.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking…This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain; many medical conditions produce pain not severe enough to preclude gainful employment. The Disability Insurance and Supplemental Security Income

ORDER – 17

programs are intended to provide benefits to people who are unable to work; awarding benefits in cases of nondisabling pain would expand the class of recipients far beyond that contemplated by the statute."). The Court finds the ALJ's RFC determination was legally sufficient and supported by substantial evidence in the record.

The Court reiterates that it is not called upon as a trier of fact. Credibility determinations are the province of the ALJ. Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of disabling pain, and those findings are undisputedly supported by substantial evidence, the Court's role is not to second-guess that decision.

## C. Step Five

The success of Plaintiff's claim of error at step five hinged on the success of his assertion that the ALJ erred earlier in the sequential evaluation.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14,** is **DENIED**.

2. Defendant's Cross-Motion for Summary Judgment, **ECF No. 15,** is **GRANTED**.

ORDER – 18

The District Court Executive is directed to file this Order and provide a copy to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED.**

**DATED** this 18th day of March, 2016.

<em><u>S/ Mary K. Dimke</u></em><br>
MARY K. DIMKE<br>
UNITED STATES MAGISTRATE JUDGE

ORDER – 19